IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RYAN D. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:19-CV-91-WKW |
| ) | [WO] |
| ALABAMA DEPARTMENT OF ) | |
| CORRECTIONS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is a motion to dismiss (Doc. # 11), filed by Defendants Jefferson S. Dunn, Commissioner of the Alabama Department of Corrections ("ADOC"), and Ruth Naglich, Associate Commissioner of ADOC's Health Services. Plaintiff Ryan D. Brown filed a response in opposition to the motion to dismiss. (Doc. # 15.) This case exemplifies the impracticality of resolving a qualified immunity defense when bad briefing intersects with bad pleading. For the reasons to follow, Defendants' motion to dismiss will be denied, and Mr. Brown will be required to replead his shotgun complaint.

## **I. BACKGROUND**

In 2017, Mr. Brown was an inmate at ADOC's Kilby Correctional Facility. In January of that year, he went to the infirmary at Kilby because he was experiencing "lower quadrant abdominal pain and the onset of appendicitis." (Doc.

# 1, at 7, ¶ 13.) He continued to make "numerous complaints of abdominal pain," including one painful episode where, on a scale of one to ten, he reported that "he was experiencing pain at the level of 50." (Doc. # 1, at 8, ¶ 14.) In response to at least one of these complaints, Mr. Brown was "given Tylenol as opposed to being referred to a general surgeon." (Doc. # 1, at 8, ¶ 14.) When he was finally hospitalized, on January 28, 2017, he required treatment in the intensive care unit. There, he "experienced respiratory failure; renal failure; [and] several operating and life[-]saving procedures, including, but not limited to, [a] tracheotomy." (Doc. # 1, at 7, ¶ 13.)

Mr. Brown brings a claim under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments. He sues Commissioner Dunn, Associate Commissioner Naglich, Kilby's warden, and Kilby's director of nursing.[1] Mr. Brown's § 1983 claim alleges that Dunn and Naglich were deliberately indifferent to his serious medical needs, but the claim does not delineate what acts or omissions were committed by which Defendant. Mr. Brown names Dunn and Naglich in their individual capacities. He also sues Naglich in her official capacity, but it is unclear whether Mr. Brown also names Dunn in his

---

[1] Mr. Brown filed this action on January 28, 2019. In early February, the summons were returned unexecuted as to the warden and director of nursing. (Docs. # 9, 10.) Plaintiff to date has not perfected service on these two Defendants.

official capacity. Mr. Brown seeks declaratory judgment and injunctive relief against "defendants" collectively. (Doc. # 1, at 4, ¶ 7.)

Dunn and Naglich move to dismiss under Federal Rule of Civil Procedure 12(b)(6). They assert qualified immunity, which is a defense to the § 1983 claim against them in their individual capacities. (Doc. # 11.)

## II. JURISDICTION AND VENUE

The court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343. The parties do not contest personal jurisdiction or venue.

## III. STANDARDS OF REVIEW

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The law "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

555. If a claim is not plausible, it "does not unlock the doors of discovery." *Iqbal*, 556 U.S. at 678.

**B.** <u>**Shotgun Pleading**</u>

Under Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). So-called "shotgun pleadings" violate Rule 8 "by failing to one degree or another to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (cleaned up). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Id.* When faced with a shotgun pleading, a defendant should move for a more definite statement under Rule 12(e). *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 n.10 (11th Cir. 2015); *see also* Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."). A court may also order repleading on its own motion. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) ("Given the district court's proper conclusions that the complaint was a shotgun pleading and that plaintiffs[] failed to connect their causes of action to the facts alleged, the proper remedy was to order repleading *sua sponte*.").

4

## IV. DISCUSSION

### A. Rule 12(b)(6) and Qualified Immunity

A defendant may raise qualified immunity in a motion to dismiss. *See Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019); *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Government officials are entitled to qualified immunity unless (1) the plaintiff's "allegations, if true, establish a violation of a constitutional or statutory right" and (2) the unlawfulness of their conduct "was clearly established such that it provided fair warning to the officers that they were violating the law." *Baas v. Fewless*, 886 F.3d 1088, 1093 (11th Cir. 2018) (cleaned up).

Defendants' misdirected arguments present no basis for dismissing Plaintiff's action against Dunn and Naglich on the basis of qualified immunity. Here is sampling of those misdirected arguments.

First, Defendants' arguments for qualified immunity rest on the erroneous premise that Plaintiff's complaint is subject to a heightened-pleading requirement. Defendants rely on the holding in *Harper v. Lawrence County, Alabama*, 592 F.3d 1227 (11th Cir. 2010), that the heightened-pleading standard governs "in section 1983 cases where qualified immunity is at issue." *Id.* at 1233; (Doc. # 11, at 4.) That part of the decision has been overturned and has not been the law of the circuit for nearly a decade. In *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), the Eleventh

5

Circuit explained that, "[a]fter *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." *Id.* at 710 (citing *Iqbal*, 556 U.S. at 662). The court recognized that prior Eleventh Circuit decisions applying "a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity . . . were effectively overturned by the *Iqbal* court." *Id.* at 709.

Second, Defendants contend that they are entitled to qualified immunity because the Complaint contains no allegations that either Dunn or Naglich "w[as] personally aware of facts from which they could infer that Mr. Brown had a serious medical need or that they actually drew that inference." (Doc. # 11, at 5.) But the official's personal knowledge of — or for that matter participation in — the underlying constitutional violation is not required for § 1983 supervisory liability to attach. Under § 1983 supervisory liability, a defendant can be held liable for causing deliberate indifference to a plaintiff's serious medical need if he or she "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citation and internal quotation marks omitted); *see also AFL-CIO v. City of Miami*, 637 F.3d 1178, 1190 (11th Cir. 2011) ("A supervisor can be held liable for the actions of his subordinates under § 1983 if he personally participates in the act that causes the constitutional violation

6

*or where there is a causal connection between his actions and the constitutional violation that his subordinates commit.*") (emphasis added). And here it appears, *albeit* not clearly, that Mr. Brown premises his § 1983 claim against Dunn and Naglich on supervisory liability. (*See, e.g.*, Doc. # 1, at 6, ¶ 13 (alleging that "defendants" collectively "have a policy and practice of failing to provide prisoners[,] such as the plaintiff[,] with adequate medical care").) Hence, Dunn's and Naglich's lack of knowledge or participation in the underlying alleged constitutional violation does not necessarily absolve them of liability under § 1983.

Third, and relatedly, Dunn and Naglich do argue, in perfunctory fashion, that "[t]here are no factual allegations that [either Dunn or Naglich] . . . developed a specific custom or policy that resulted in deliberate indifference" to Plaintiff's alleged serious medical needs. (Doc. # 11, at 10.) But this argument ignores the Complaint's allegations (set out in the preceding paragraph) of ADOC's alleged policies and practices of underfunding outsourced medical care and of understaffing medical services that Mr. Brown contends are the cause behind the allegedly deliberately indifferent medical treatment he received. (*See* Doc. # 1, at 4–5, ¶¶ 10, 11; *see also* Doc. # 1, at 6, ¶ 13 (alleging that "extraordinary understaffing for medical services leads to a host of predictable problems relative to the delivery of medical care and treatment, including, but not limited to, delays, failure to diagnose and treat, failures to follow-up, errors and decisions not to treat seriously ill

7

prisoners.").)  No opinion is expressed on whether these or other allegations are sufficient to allege a causal connection between Dunn's and Naglich's alleged failure to sufficiently fund adequate medical care for the inmates in their custody and Mr. Brown's injuries.  Defendants do not address the allegations; hence, the court does not either.

Fourth, Dunn and Naglich contend that they are entitled to qualified immunity because the ADOC had "a contract with Corizon, LLC to provide health care related services to" its inmates and "were entitled to rely on the decisions of the medical personnel and consequently cannot be liable for the treatment provided." (Doc. # 11, at 9.)  That argument is debunked to the extent that Defendants contend that they cannot be held liable "for any constitutional deprivations caused by the policies or customs of" Corizon, LLC.  *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985).  As the Eleventh Circuit explained in *Ancata*:

> The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals.  This duty is not absolved by contracting with an entity such as Prison Health Services. Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service.  In that sense, the county's duty is non-delegable.

*Id.*

Fifth, Defendants assert that the entire action should be dismissed against them.  This argument overlooks that Naglich "is being sued in her individual and

8

official capacities . . . ." (Doc. # 1, at 2, ¶ 3.) Potentially, Dunn also is named in his official capacity. (Doc. # 1, at 4, ¶ 7 (requesting a "declaratory judgment and injunctive relief" against "defendants").) Qualified immunity is not a defense to § 1983 official-capacity claims for declaratory or injunctive relief. *Ratliff v. DeKalb Cty.*, 62 F.3d 338, 340 n.4 (11th Cir. 1995) ("Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief."). Hence, at the very least, dismissal of the official-capacity claims against Naglich is not appropriate on the basis of qualified immunity.

Sixth, Defendants move for dismissal of state-law claims based on state-agent immunity. (Doc. # 11, at 10–11.) There are no state-law claims in the Complaint.

In sum, Defendants' arguments based on spurious reasoning do not supply justification for the grant of qualified immunity. Accordingly, Defendants' motion to dismiss will be denied.

**B.** <u>**Shotgun Complaint**</u>

Mr. Brown is not off the hook, though. His Complaint is a shotgun pleading.

The shotgun-pleading sins of the Complaint come in two forms. First, the complaint asserts a claim "against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d

9

at 1323. The single count refers to "defendants" collectively a total of ten times in the court's five paragraphs. The count does not specify under what theory each Defendant allegedly is liable or what conduct forms the basis of liability. What did each Defendant do to "act[] with deliberate indifference"? (Doc. # 1, at 8 ¶ 15.) Is Mr. Brown really alleging that Dunn and Naglich gave him Tylenol instead of referring him to a surgeon? (Doc. # 1, at 8, ¶ 14.) Mr. Brown's failure to identify the specific acts or omissions of each Defendant leaves the deciphering of the claims to guesswork. It is of no help that the count "adopts all the allegations" in the preceding paragraphs. (Doc. # 1, at 8.) Mr. Brown also fails to allege in what capacity he is suing the warden and director of nursing or whether, as stated, Dunn is being sued in his official capacity.

Second, and similarly, the count is replete with conclusory and vague allegations. *See Weiland*, 792 F.3d at 1321–22. Four of the five paragraphs in this count repeatedly parrot the legal standard of "deliberate indifference," without connecting any actions of Defendants to that standard. (Doc. # 1, at 8–9, ¶¶ 15–18.) The count also includes conclusory allegations, for example, that "Defendants have been and are aware of all deprivations complained herein." (Doc. # 1, at 9, ¶ 17.)

Dunn and Naglich should have moved for a more definite statement. *See Weiland*, 792 F.3d at 1321 n.10. They did not do so; therefore, repleading must ordered *sua sponte*. *See id.*; *see also Wagner*, 464 F.3d at 1280. "When a litigant

files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must *sua sponte* give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro, Inc.*, 878 F.3d at 1296.  Therefore, the Complaint will be dismissed without prejudice to give Mr. Brown an opportunity to refile according to the instructions in this Order.

### III.  CONCLUSION

For the reasons above, it is ORDERED that:

(1)   Plaintiff's Complaint (Doc. # 1) is DISMISSED for failure to comply with Federal Rule of Civil Procedure 8(a)(2).

(2)   Plaintiff is GRANTED until **October 15, 2019**, to file an Amended Complaint that complies with the pleading requirements and this Order.  Failure to file an Amended Complaint by this deadline will result in dismissal of this action.

(3)   Defendants' motion to dismiss (Doc. # 11) is DENIED without prejudice.  Defendants may move to dismiss Plaintiff's Amended Complaint, if and when appropriate.

DONE this 30th day of September, 2019.

                                                  /s/ W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE